UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DERRICK COLEMAN,

                                                Plaintiff,

                                                                                                     <u>DECISION AND ORDER</u>

                                                                                                     05-CV-6107L

               v.

DR. SUTTON, M.D., in his/her
individual and official capacity,
WELLBURN, R.N., his/her individual and
official capacity,

                                              Defendants.
_____

       Plaintiff, Derrick Coleman, appearing *pro se*, commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that defendants Reginald Sutton, M.D., and Tamela Welburn, R.N., both of whom were at all relevant times employed by DOCS, violated plaintiff's rights in 2004, while plaintiff was confined at Orleans Correctional Facility ("Orleans"). Plaintiff and defendants have both moved for summary judgment.

## BACKGROUND

Plaintiff alleges that on August 4, 2004, he met with Nurse Welburn during sick call at Orleans. They discussed plaintiff's medical history, which includes past episodes for cancer and leukemia, both of which have been treated with apparent success.

Welburn and plaintiff allegedly got into an argument about certain matters, particularly Welburn's opinion that plaintiff was physically able to participate in a work assignment in the mess hall. That same day, plaintiff filed two grievances against Wellburn, alleging inadequate medical care and complaining about the mess hall work assignment. Dkt. #38-3 at 12-23. Both grievances were denied.

On August 6, 2004, plaintiff met with Dr. Sutton. Nurse Welburn was also present. Plaintiff and Sutton also got into an argument about the work assignment. Plaintiff told Sutton that he was afraid that working in the mess hall might jeopardize his health. Dr. Sutton allegedly replied, in effect, that if plaintiff was too sick to work in the mess hall, then Dr. Sutton would have him transferred to the infirmary. Plaintiff insisted that he did not need or want to go to the infirmary; he simply did not want to be put on work assignment in the mess hall.

Dr. Sutton called for an officer to escort plaintiff to the infirmary. Plaintiff was taken to the infirmary, but after he arrived there he stated that he did not want to stay there, and that he would rather go to the Special Housing Unit ("SHU"). Plaintiff was then transported to the SHU.

Nurse Wellburn issued a misbehavior report against plaintiff on August 6, 2004, charging him with creating a disturbance and failing to obey a direct order. Dkt. #30-3 at 28. Plaintiff eventually pleaded guilty to both charges. Dkt. #30-2 at 56.

Plaintiff filed the complaint in this action on March 10, 2005. He alleges that defendants retaliated against him (by filing a false misbehavior report and ordering him transferred to the infirmary) in retaliation for plaintiff's oral protests concerning his medical care and the proposed work assignment, in violation of his rights under the First Amendment to the United States Constitution.[1]

**DISCUSSION**

In order to establish a First Amendment retaliation claim, plaintiff must show (1) that he engaged in constitutionally protected speech or conduct, (2) that the defendants took adverse action against him, and (3) that there was a causal connection between the protected activity and the adverse action. *Dawes v. Walker*, 239 F.3d 489, 492 (2$^d$ Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

The Second Circuit has cautioned district courts to approach prisoner claims of retaliation "with skepticism and particular care." *Dawes*, 239 F.3d at 491. Such claims are "easily fabricated," since "virtually any adverse action taken against a prisoner by a prison official–even those otherwise

---

[1] Plaintiff does not allege any claims relating directly to his medical care.

not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act." *Id.*

In the case at bar, I find that even viewing the record in the light most favorable to plaintiff, the undisputed facts establish that defendants are entitled to summary judgment. For one thing, plaintiff pleaded guilty to the charged in the misbehavior report filed against him by Nurse Welburn. That alone defeats any claim based on the issuance of the report. *See Reid v. Doe*, No. 95-CV-1144, 1997 WL 216226, at *5 (N.D.N.Y. Apr. 15, 1997) (stating that since inmate plaintiff pleaded guilty to harassment charge in misbehavior report, there could be no constitutional violation arising out of issuance of report, even if report was motivated in part by retaliation) (citing *Lowrance v. Achtyl*, 20 F.3d 529, 534-35 (2$^d$ Cir. 1994)).

In addition, I see no basis for a claim of retaliation with respect to Dr. Sutton's directive that plaintiff be transferred to the infirmary. Assuming *arguendo* that plaintiff's objections to the choice of a mess hall assignment or the infirmary constituted protected speech, at most the record indicates a disagreement between plaintiff and Dr. Sutton over whether plaintiff's health prevented him from working in the mess hall. That Dr. Sutton allegedly took the approach of telling plaintiff, in effect, that if plaintiff were truly not well enough to work in the mess hall, then he should be put in the infirmary, does not amount to prohibited retaliation.

In any event, plaintiff ultimately ended up not in the infirmary, but in SHU. That was not done at the direction of Dr. Sutton, but resulted from plaintiff's own refusal to stay in the infirmary and his statement that he would rather go to SHU. Aside from his own subjective aversion to going to the infirmary, however, plaintiff has not demonstrated that a transfer there would have "deter[red]

a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Dawes*, 239 F.3d at 493. *See*, *e.g.*, *Warren v. Goord*, No. 99 CV 296 Slip Copy, 2006 WL 1582385, at *15 (W.D.N.Y. May 26, 2006) (since complaint was "devoid of any allegations that the transfer [of inmate plaintiff to infirmary], by itself, resulted in any additional deprivation of privileges as required to support a finding that Warren's transfer resulted in some cognizable injury to Warren's First Amendment rights," transfer "d[id] not, as a matter of law, constitute action 'that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights,' and, thus, d[id] not provide the requisite 'adverse action' necessary to support the second prong of a First Amendment retaliation claim" (quoting *Dawes*, 239 F.3d at 493).

## CONCLUSION

Plaintiff's motion for summary judgment (Dkt. #28) is denied. Defendants' motion for summary judgment (Dkt. #29) is granted, and the complaint is dismissed.

Plaintiff's motion to compel (Dkt #21) is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 7, 2008.